**Ann Clare LAISE, Individually and as Next Friend of the Minor Laura Maria Laise, Plaintiffs,**

v.

**CITY OF UTICA, a Municipal Corporation, Utica Police Department, and Michael Reaves, Jointly and Severally, Defendants.**

Civil Action No. 96–40232.

United States District Court, E.D. Michigan, Southern Division.

July 14, 1997.

Steven A. Kargenian, Grosse Pointe Woods, MI, for Plaintiffs.

Audrey J. Forbush, Bloomfield Hills, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed April 14, 1997.[1]

### BACKGROUND

On September 13, 1995, defendant Det./ Sgt. Michael Reaves of the Utica Police Department ("Reaves") and other Utica police officers executed a search warrant at the Laise residence in Utica, Michigan. Present in the home at the time of the search were plaintiffs, Ann Clare Laise ("Ann Laise") and her 16–year–old daughter, Laura Maria Laise ("Laura Laise"), and two other minor children, Matthew and Michael Laise. The items named in the warrant included, *inter alia*, illegal drugs, records of drug transactions, pre-recorded drug money, records of property ownership or tenancy, guns or other weapons used to protect drugs or drug money and vehicles used to transport drugs or drug money.[2]

On March 27, 1996, plaintiffs filed a three count complaint in Macomb County Circuit Court concerning the September 13 search. The complaint named Reaves, the City of Utica, and the Utica Police Department.

Count I alleges a violation of plaintiffs' constitutional rights as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983. Count II alleged negligence and Count III alleged intentional infliction of emotional distress. Based on the § 1983 claim, defendants removed the action to this court on June 28, 1996. On August 9, 1996, this court remanded Counts II and III to the Macomb County Circuit Court. Only plaintiff's § 1983 claim is pending before this court.

In their § 1983 claim, plaintiffs allege that Reaves, as an employee of the Utica Police Department, was acting within the scope of his employment as a law enforcement officer, under the color of law, and that he exceeded his authority, depriving the plaintiffs of their constitutional rights in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Specifically, plaintiffs allege that defendant Reaves and his assisting officers executed the search warrant at approximately midnight on September 13 while plaintiffs were sleeping. Plaintiff Ann Laise alleges that she was ordered out of her bed and sent to the home's lower level, dressed only in a bra and underwear. Plaintiff Ann Laise further alleges that her request to put on her housecoat was denied and she was forced to stand in front of many male officers while the officers conducted their search, causing her humiliation and embarrassment. The same allegations are made on behalf of the minor plaintiff, Laura Laise.

Plaintiffs also claim that defendant Reaves and his assisting officers damaged items contained within the home, including a computer, cabinets, doors and other fixtures which were unidentified. Finally, plaintiffs allege that a temporary license plate was removed from one of the vehicles parked at the resi-

---

1. On June 11, 1997, this court heard oral arguments on defendants' motion for summary judgment. At that time this court noted the absence of any documentation in support of the positions of both parties relative to the reasonableness of Reaves' conduct in the search of plaintiffs' home. At the request of defense counsel, the court granted the parties an additional two weeks to submit supplemental briefs, along with affidavits and/or deposition testimony in support of their respective positions.

2. The warrant was issued based on the arrest of Mr. Luigi Laise, Ann Laise's husband, in connection with his alleged delivery of fifteen pounds of marijuana to undercover police officers. Luigi Laise was in custody at the time the search warrant was executed.

dence. Plaintiffs contend that this removal was outside the scope of the search warrant, and that it prevented plaintiff Ann Laise from going to work the following morning, which caused her loss of wages and salary. Plaintiffs also allege vicarious liability against the City of Utica and the Utica Police Department under § 1983 for Reaves' actions.

## DISCUSSION

Defendant the City of Utica argues that summary judgment is appropriate in regard to the charges against it because it cannot be subject to § 1983 liability under a theory of *respondeat superior* and because the plaintiffs have failed to identify any unconstitutional custom or policy implemented by the City of Utica. The City of Utica cites *Monell v. New York City Department of Social Services*, 436 U.S. 658, 692–694, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978), wherein the U.S. Supreme Court found that § 1983 could not be interpreted to incorporate doctrines of vicarious liability and that liability against municipalities is to be imposed only when a governmental policy or custom is responsible for the deprivation of constitutional rights. Moreover, the City of Utica directs this court to *Barnier v. Szentmiklosi*, 810 F.2d 594, 599 (6th Cir.1987), wherein the Sixth Circuit, citing *Monell*, found that a § 1983 action was unavailable where the plaintiff did not allege or demonstrate any practice or custom on the part of the defendant city or its police department with respect to any of the individual officers' actions.

Plaintiffs, on the other hand, cite only one case, *Fluellen v. U.S. Dept. of Justice Drug Enforcement Admin.*, 816 F.Supp. 1206 (E.D.Mich.1993), in purported support of their argument that the City of Utica may be held vicariously liable for the actions of Reaves. Rather than helping the plaintiffs' argument, however, this case hurts it. In *Fluellen*, the court addressed the issues of governmental immunity under M.C.L. § 91.407(1) and vicarious liability relative to *pendent state-law claims*. In the case before the court, however, the state law claims have been remanded to Macomb County Circuit Court, leaving only the federal § 1983 claim.

Moreover, the *Fluellen* court discussed the pleading requirements of a § 1983 claim and noted that although the Sixth Circuit does not require a heightened pleading standard for a § 1983 claim, "[a] complete failure to plead a policy or custom would result in dismissal." 816 F.Supp. at 1215 (citing *Foster v. Walsh*, 864 F.2d 416, 419 (6th Cir.1988)). Here, plaintiffs have not pled the existence of an unconstitutional practice, custom or policy by the City of Utica as it relates to the facts of this case. In fact, the only mention than plaintiffs make of any policy is in their reply brief where they suggest that the City of Utica should adopt a specific policy that would require the presence of female officers when search warrants are executed in situations such as the one in this case. Such a suggestion, however, is not sufficient to meet the pleading requirements for a § 1983 action under *Monell*, *Barnier*, or *Fluellen*. Accordingly, this court dismisses the complaint as to the City of Utica on the § 1983 claim.

The Utica Police Department argues that because it is an agency of the City of Utica, it is not a proper defendant in this lawsuit. This position is consistent with *Haverstick Enterprises v. Financial Fed. Credit*, 803 F.Supp. 1251 (E.D.Mich.1992), wherein the court dismissed a case against the City of Romulus Police Department because the police department is not a legal entity against whom a suit can be directed. Likewise, in *Pierzynowski v. Police Dept. City of Detroit*, 941 F.Supp. 633 (E.D.Mich. 1996), this court stated that the City of Detroit Police Department was not a legal entity against which a suit can be directed, but rather was "merely a creature of the City of Detroit and therefore the City of Detroit is the proper defendant in this case." *Id.* at 637, fn. 4. Accordingly, this court dismisses the complaint as to the Utica Police Department on the § 1983 claim.

Finally, Reaves argues that summary judgment is appropriate in regard to the § 1983 claim against him because he is entitled to qualified immunity, as the search of plaintiff's home was conducted pursuant to a valid search warrant and his actions were

objectively reasonable in light of the circumstances.

■ In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the U.S. Supreme Court stated that a good faith immunity issue presents a threshold question which is to be resolved as early as possible. Further, the question of immunity is solely a legal one which is to be determined by the trial judge prior to trial. *Donta v. Hooper,* 774 F.2d 716 (6th Cir.1985) (citing *Harlow* ). In *Anderson v. Creighton,* 483, U.S. 635, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court cited *Harlow* in explaining that a motion for dismissal based upon qualified immunity turns upon the "objective legal reasonableness" of the officer's actions, assessed in light of the legal rules that were "clearly established" at the time the action was taken.

In *Poe v. Haydon,* 853 F.2d 418 (6th Cir. 1988), the Sixth Circuit, in interpreting *Anderson,* stated as follows:

> The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his alleged action.

*Id.* at 423. citing *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the court then went on to explain that:

> Since qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial,' ... the doctrine has been formulated in such a way as to allow insubstantial claims to be dismissed early in the litigation, such as by summary judgment, thereby protecting officials from the costs of trial and the burdens of litigation. (citation omitted).

*Id.* at 424. Further, the court stated that:

> the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to the truth of the allegations that the defen-

dant in fact committed acts that violate clearly established law. (citation omitted). *Id.* at 425.

Plaintiffs argue that Reaves' conduct during the search of their home was unreasonable in three respects. They allege that Reaves unnecessarily destroyed their property, that he unreasonably denied them permission to cover themselves during the search which was conducted by male officers, and that his seizure of the license plate was outside the scope of the warrant.

■ The U.S. Supreme Court has stated that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States,* 441 U.S. 238, 258, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979). The conduct of police officers in executing a search warrant, however, is always subject to judicial review as to its reasonableness. *Id.* The Sixth Circuit, in *Hill v. McIntyre,* 884 F.2d 271, 278 (6th Cir.1989), addressed the issue of destruction of property by police officers during a search pursuant to a search warrant as it relates to a § 1983 action. The court stated that:

> Once again, the standard is reasonableness, and in a § 1983 action the District Court must determine not whether destruction was 'reasonably necessary to effectively execute a search warrant' but whether the plaintiff has raised factual issues to be submitted to a jury on this point. (citation omitted).

*Hill,* 884 F.2d at 278.

■ In their complaint, plaintiffs specifically allege that Reaves destroyed their "computer, computer table, desk, cabinets, doors and various other fixtures and items around the house." Plaintiffs, however, have not proffered any documentation that supports these claims. Notably, both plaintiffs submitted affidavits stating that during the search Reaves "destroyed my property," but did not enumerate or specify the nature of the damages.

Each of the officers who took part in the search has submitted an affidavit stating that there was no damage done to the Laise property, although they do admit removing items from drawers and not replacing them,

leaving the home in disarray. Further, according to defendants, Mr. Luigi Laise testified that he took the computer which had allegedly been damaged during the search to Computer City to be repaired and was told that it would cost more to repair it than the computer was actually worth. Mr. Laise further testified that Computer City retained possession of the computer when he refused to pay the $20.00 service fee for its inspection. Computer City, however, states in a letter responding to a Subpoena Duces Tecum issued by defendants that they have no record of any computer being brought to their store for examination or repair by anyone in the Laise family. Thus, this court finds that there is insufficient evidence proffered by plaintiffs to create a genuine issue of material fact on the issue of destruction of property during the search of the Laise home.

■■■ regard to Reaves' alleged refusal to allow Ann Laise to put on her robe before going downstairs, Reaves asserts that his actions met the "objective legal reasonableness" test cited *supra*. He contends that it is not unreasonable for an officer in possession of a facially valid search warrant for a residence to refuse the requests of plaintiffs to rummage in closets or dresser drawers to allegedly obtain cover-up clothing. Safely securing the residence and the occupants within, he contends, was his primary concern. Furthermore, while plaintiffs claim that they were forced "in a practically nude condition to go to the lower level [of their home] and stand in front of many male officers," this claim is not supported by their own deposition testimony. In her deposition testimony, Ann Laise states that she was allowed to cover herself with the sheet from her bed before she went to the dining room. Laura Laise testified that she was not dressed only in underwear but was wearing a tee shirt as well and that she was allowed to put on a jacket while she sat at the dining room table during the search.

Both plaintiffs reiterate in their affidavits that they were made to sit in the presence of several male officers dressed only in their undergarments and were refused permission to cover up. Given the deposition testimony

referred to above, however, the affidavit testimony does not create a genuine issue of material fact.

■■ It is generally established that, under Rule 56, a party may not create a genuine issue of material fact by submitting an affidavit, after a motion for summary judgment has been made, containing conclusory allegations that contradict prior admissions or deposition testimony. *See Dotson v. United States Postal Service*, 977 F.2d 976, 978 (6th Cir.1992) (plaintiff's affidavit opposing summary judgment, which contradicted prior statements that he was "fired" from prior employment, failed to create a genuine issue of material fact in a Title VII wrongful termination action); *Freeman v. Unisys Corp.*, 898 F.Supp. 485, 490 (E.D.Mich.1995) (stating that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony."); *United States v. Certain Real Property*, 791 F.Supp. 171, 173 (E.D.Mich.1992) (defendant's affidavit contradicting admissions in deposition testimony concerning knowledge of illegal drug activities deemed insufficient to create a genuine issue of material fact). *See also Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1105 (7th Cir.1985) ("Parties cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions.") *Francis v. Gaylord Container Corp.*, 837 F.Supp. 858, 864 (S.D.Ohio 1992), *aff'd*, 9 F.3d 107 (6th Cir.1993) (contradictory post-deposition affidavits by a witness are improper and should not be considered by the court in deciding the summary judgment motion) (citing *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 315 (6th Cir.1989)).

■■ Plaintiffs further contend that Reaves' behavior was unreasonable in that he allegedly knew that females would be in the home and dressed for bed. Because he knew this, plaintiffs argue, Reaves should have brought female officers with him to conduct the search.

The reasonableness of Reaves' actions, however, finds support in *Collier v. Locicero.*, 820 F.Supp. 673 (D.Conn.1993). In *Collier,*

an officer conducted a brief "frisk" of the occupants of an apartment during a search of the apartment pursuant to a valid search warrant. The plaintiff, a female, brought suit under § 1983, arguing that a search of her person by a male officer while she was wearing only a nightgown was unreasonable, when the officer knew or should have known that a frisk of such a person would be required and he could have had a female officer accompany him. The court concluded that the search conducted by the defendant did not violate the Fourth Amendment and granted summary judgment in favor of the defendant. *Id.* at 680.

The *Collier* court noted first that the search was not overly intrusive; it was not a "strip search" and the officer did not touch any private areas of the plaintiff through her nightgown. Second, the court found that such a search serves "the essential function of ensuring that police officers have an opportunity to discover concealed weapons." Finally, the court determined that to require that all such searches be conducted by female officers would impose a substantial burden on police work, given the relatively small proportion of female police officers. The court stated that:

> This requirement would be burdensome even if it applied only where the police had reason to believe there might be a lightly clad woman on the premises being searched, since nighttime searches of private dwellings are a relatively common occurrence.

*Collier*, 820 F.Supp. at 680–681.

The facts in this case lend themselves to a finding of reasonable conduct even more readily than in *Collier* since plaintiffs have not alleged that Reaves touched them in any improper way. Reaves has asserted that his concern was for the safety of the officers; he did not want to afford any of the occupants an opportunity to obtain a weapon. Finally, the absence of a female officer in this circumstance is reasonable for the same reasons that it was found reasonable in *Collier*. To require the presence of a female officer every time a search warrant is executed at night at a home where women may be lightly clad would hinder the police in the efficient execution of their duties.

Accordingly, this court finds that Reaves' behavior in regard to denying plaintiff her request to get her robe was objectively reasonable.

■ Finally, in their complaint plaintiffs allege that the officers improperly seized the temporary license plate from a vehicle parked at the Laise residence. Defendants assert that seizure of the temporary license plate was proper under the search warrant, which listed "records of property ownership" and "vehicles used to transport drugs or drug money." Plaintiffs point to no legal authority, and this court was unable to find any legal authority, which indicates that such a seizure is outside the scope of the warrant under these circumstances. In her affidavit, Ann Laise states that "Reaves removed several items of property which was (sic) not addressed within the warrant," but, again, does not enumerate or specify those items. This court finds such allegations to be vague and conclusory and thus insufficient to create a genuine issue of material fact for a jury.

Because plaintiffs have failed to create a genuine issue of material fact concerning the reasonableness of Reaves' actions during the search of the Laise household, this court finds that Det./Sgt. Michael Reaves is entitled to qualified immunity. Accordingly, this court grants summary judgment to defendant Reaves on the § 1983 claim.

### ORDER

**IT IS HEREBY ORDERED** that defendants', CITY OF UTICA, and UTICA POLICE DEPARTMENT, motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on April 14, 1997 is **GRANTED** in its entirety and that the claims alleged in the March 27, 1996 removed complaint against those defendants are **DISMISSED** with prejudice.

**IT IS HEREBY FURTHER ORDERED** that defendant, MICHAEL REAVES's, motion for summary judgment pursuant to Fed-

eral Rule of Civil Procedure 56(c), filed or April 14, 1997 is **GRANTED** in its entirety.

**SO ORDERED.**